# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### November 9, 2010 Session

## STATE OF TENNESSEE v. ROBERT A. CANTRELL

### Direct Appeal from the Circuit Court for Rutherford County
### No. 61657      David M. Bragg, Judge

### No. M2009-02274-CCA-R3-CD - Filed January 25, 2011

The defendant, Robert A. Cantrell, was convicted by a Rutherford County jury of the sale of .5 grams or more of cocaine, a Class B felony, and was sentenced by the trial court as a Range II multiple offender to sixteen years in the Department of Correction. He raises three issues on appeal: (1) whether the trial court erred by not declaring a mistrial following a bomb threat and ensuing building evacuation that took place during voir dire; (2) whether his right to trial by a fair and impartial jury was prejudiced by the jurors' exposure to the bomb threat and publicity surrounding the case; and (3) whether the evidence was sufficient to sustain the conviction. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JR., JJ., joined.

Joe M. Brandon, Jr., Smyrna, Tennessee, for the appellant, Robert A. Cantrell.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and Thomas E. Parkerson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On June 4, 2008, the Rutherford County Grand Jury indicted the defendant for one count of the sale of less than .5 grams of cocaine and three counts of the sale of .5 grams or more of cocaine. The charges were based on drug transactions that took place on January 8, 9, 11, and 23, 2008, between the defendant and a confidential informant employed by the

Rutherford County Sheriff's Department. At the conclusion of a jury trial, the defendant was convicted of the sale of .5 grams or more of cocaine based on the January 9 transaction and acquitted of the other counts of the indictment. We will, therefore, confine our summary of the facts to the evidence relevant to the January 9 transaction.

The confidential informant described the basic procedure employed in the undercover transactions, testifying that the detectives searched his person and vehicle both before and after the sales, gave him the cash to pay for the drugs, and followed him to and from the locations where the sales took place. In addition, the detectives wired him for audio recordings in the first three transactions and had him wear a hidden video camera in the January 9 transaction. The informant identified the audio and video recordings of the January 9 transaction and made a positive courtroom identification of the defendant as the individual depicted in the recording.

The informant testified that the detectives instructed him to purchase $400 worth of cocaine in the January 9 transaction. However, the amount of cocaine that the defendant gave him "looked small" so he tried to pay the defendant only $200. The defendant told him that he was "a dollar short," so the informant "counted the money back out, laid it on the washer or dryer, . . . and [the defendant] took the money." Afterwards, the informant got back in his vehicle and drove to the meeting site with the detectives, where he gave them the drugs he had purchased, returned the $100 he had not used in the transaction, and had his vehicle and person searched again. The informant stated that, according to the defendant, the drugs he purchased were "supposed to be two grams of crack cocaine and a gram of powder cocaine."

The informant testified that he had considered the defendant a friend and that they had "r[u]n around and sold drugs together" in the past. He acknowledged that he had numerous prior convictions in Rutherford County, marijuana and "stolen possession" charges in Cheatham County that had been nolle prosequied after he had contacted the detectives about working as an informant, and a pending charge for aggravated burglary in Rutherford County. He said he was motivated to act as a confidential informant because he wanted help on his cases, was "tired of living that lifestyle," and wanted to distance himself from his former associates. He never, however, was promised anything on any of his cases.

On cross-examination, the informant pleaded the Fifth Amendment with respect to the details of his pending aggravated burglary case but acknowledged that he had been arrested on April 17, 2008, and charged with burglarizing a man's home. He further acknowledged that he was paid $150 for his work as an informant and in addition had his charges in Cheatham County dismissed. He denied that he was under the influence at the time of the drug transactions.

Detective Jeremy Weaver of the Rutherford County Sheriff's Department testified that he was assigned to the narcotics division and was involved in various capacities with the drug transactions at issue in the case. Assigned to surveillance during the January 9 transaction, he followed the informant to an apartment, watched as he entered the apartment and emerged again a few minutes later, and then followed him as he drove directly to the "meet site."

Detective Jamin Humphress of the Rutherford County Sheriff's Department testified that he was assigned to the narcotics division and was involved with two of the four drug transactions in the case. During the January 9 transaction, his role involved placing surveillance equipment in the informant's vehicle, wiring the informant's person, and thoroughly searching the vehicle before and after the transaction. He described the process he employed during the searches and said he found no drugs in the vehicle during either search. On cross-examination, he said he could not recall if he searched the vehicle's vents.

Lieutenant Philip Martin identified the evidence envelope containing the rock-like and powder substances from the January 9 transaction, which he said he transported to the Tennessee Bureau of Investigation ("TBI") for analysis.

TBI Special Agent Denotria Patterson, the forensic scientist who analyzed the substances from the January 9 transaction, determined that they consisted of .9 grams of powder cocaine and .6 grams of crack cocaine.

Detective Tony Hall of the Rutherford County Sheriff's Department, the lead investigator in the case, testified that the January 9 transaction took place at the defendant's residence. He said he searched the informant before and after the transaction to ensure he had no contraband on his person, gave him $400 in prerecorded bills, and followed him to the site of the first transaction, where the informant made a telephone call to the defendant and was instructed by the defendant to come to his apartment. He then followed the informant to the defendant's apartment, where the deal took place. Detective Hall identified the videotape of the transaction, which was played for the jury. He said that after the transaction the informant returned the additional $100 he had given him and turned over the powder and crack cocaine he had purchased.

On cross-examination, Detective Hall testified that he first came into contact with the informant after the informant, a convicted felon, was caught with a 9 millimeter gun that had been stolen in a home burglary in Rutherford County. He repeated that he had thoroughly searched the informant before and after the drug transactions but acknowledged that he did not check the informant's underwear or between his buttocks. He further acknowledged that there were no tape recordings of the informant's telephone calls arranging the transactions

and that he heard only the informant's side of the conversations. Finally, he testified that the informant had paid approximately twice the street value for the cocaine he received in the January 9 transaction, which Detective Hall attributed to the defendant's having given the informant less than "the full amount that [the informant] was trying to purchase."

On redirect examination, Detective Hall testified that in nearly all of the approximately 300 drug transactions in which he had been involved, the amount of narcotics purchased ended up as less than the amount purportedly being sold because "the people that are selling . . . want to make additional profits."

The defendant elected not to testify and rested his case without presenting any proof.

## ANALYSIS

### I. Failure to Declare Mistrial

The defendant contends that the trial court committed reversible error by not declaring a mistrial following the bomb threat and building evacuation that took place during voir dire, arguing that the "[j]urors . . . were clearly biased" by the experience. The State responds by arguing, among other things, that the defendant has waived the issue by not making a contemporaneous objection or requesting a mistrial. We agree with the State.

The record reflects that voir dire was interrupted, and the building evacuated, from 10:07 a.m. until 1:36 that afternoon. When the court reconvened, the prosecutor immediately requested that the defendant's bond be revoked and the case reset for the following week with a different jury panel, stating that there had been a bomb threat, that the venire members had appeared frightened as they were filed out of the courtroom, and that a reporter, who somehow knew the informant's name, had attempted to get him to discuss the case and had announced that "he was planning to run a story on this." Defense counsel opposed the request, asserting that the defendant had nothing to do with the bomb threat and that the State was "just trying to gain an advantage and force [the defendant] into making" a plea.

In denying the motion, the trial court noted that they had had "these same threats earlier in the week" and that, "as far as concern for all our safety, we've all got that situation every day" and "[t]here's no such thing as safe." The court did, however, grant the State's request for "a gag order for attorneys," stating that it would "order that people refrain from making any comments about" the case or what had transpired until the conclusion of the trial.

When voir dire resumed, defense counsel asked whether any of the venire members had heard anything about the reason for the building evacuation. One member replied that

he had heard it was "a bomb scare" and that "they were worried about some trial on the fourth floor." Defense counsel asked if the fact that "it apparently relate[d]" to the case at bar affected the venire members, and one replied that it made him "uneasy" while several others apparently nodded their heads in agreement. Defense counsel inquired whether the venire members would hold the bomb scare against the defendant, and they indicated that they would not. He then asked if they thought they could give the defendant a fair trial, and one member voiced his uncertainty and fear, observing that there were "plenty" of other venire members and stating that he would prefer not to sit on the jury. However, after a short lecture by the trial court on the responsibilities of citizenship, that venire member affirmed that he was willing to serve and was capable of rendering a fair and impartial verdict "[i]f it c[ame] down to it."

Defense counsel, thus, not only opposed the prosecutor's motion to revoke the defendant's bond and continue the case to the next week with a different venire, but also failed to raise any objections of his own to the continuation of the trial with the assembled venire members, other than to request that the venire member who had expressed fear be removed for cause.[1] He also failed to request a mistrial, either at that time or following the impaneling of the jury. We, therefore, agree with the State that the defendant has waived this issue for appeal. See Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

## II. Fair and Impartial Jury

The defendant next contends that he was deprived of his right to trial by a fair and impartial jury due to the media coverage of the bomb threat, during which, according to the defendant's brief, the defendant was referred to as a "drug kingpin." The State responds by arguing that the defendant has waived this issue by his failure to make a contemporaneous objection at trial and by his failure to include appropriate argument or citation to the record in his appellate brief. We, again, agree with the State.

By not raising the alleged prejudicial media coverage as an issue at trial, the defendant has waived consideration of the issue on appeal. See Tenn. R. App. 36(a). The defendant also failed to include any meaningful argument on the issue or any citations to the record in his appellate brief. A defendant who fails to make an argument on an issue or appropriate citations to the record waives the issue on appellate review. See Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b). As the State points out, there is nothing in the record, aside

---

[1] The trial court denied counsel's request that the venire member be removed for cause. We note, however, that the member was excused following the third round of peremptory challenges.

from the assertions of counsel at the motion for new trial, to show that there was media coverage of the event, that the defendant was referred to as a "drug kingpin" during that coverage, or that any of the jurors were exposed to such information. As for this latter point, we note that the trial court repeatedly admonished the jury not to talk to anyone about the case, read any articles, or consult any source of information other than the evidence introduced at trial. We further note that, despite the defendant's claim of the jury's having been prejudiced against him by the alleged media coverage, he was acquitted of all but one of the four counts of the indictment. We conclude, therefore, that the defendant is not entitled to relief on the basis of this claim.

## III. Sufficiency of the Evidence

Finally, the defendant challenges the sufficiency of the evidence in support of his conviction, arguing that the evidence "was clear" that the transaction constituted a casual exchange rather than the sale of a controlled substance. In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212

Tenn. 464, 370 S.W.2d 523 (1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The jury heard the testimony of the informant and the detectives with respect to the procedures employed in the undercover transaction as well as the specific details of the exchange, in which the informant paid the defendant $300 for what turned out to be .9 grams of powder cocaine and .6 grams of crack cocaine. The jury also viewed the videotape of the transaction, where the defendant is clearly visible. Although a "casual exchange" may include a transaction in which money is involved, it contemplates a "casual exchange" of a controlled substance that takes place "without design." State v. Helton, 507 S.W.2d 117, 120 (Tenn. 1974). When viewed in the light most favorable to the State, a rational jury could have reasonably concluded that the transaction constituted a sale of cocaine rather than a casual exchange between friends. We conclude, therefore, that the evidence was sufficient to sustain the conviction.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE